MORTON TRUST COMPANY, as Trustee under the Will of MAHLON SANDS, Deceased, Appellant, *v.* MAHLON A. SANDS et al., Appellants, and FREDERIC DE P. FOSTER et al., as Trustees, et al., Respondents.

Will — testamentary trusts — valid provision of will not affected by invalid provision of codicil — scope of surrogate's decision thereon.

A testator left him surviving a widow and four children, one of the latter being by a former wife. His widow died before the youngest child became of age. By the 10th clause of the will the testator, in substance, directed that when the testator's youngest child attained its majority all of the residue of his estate should be divided equally between his wife, provided she had remained his widow, and her children by him, a separate trust fund being created for each of said persons, the income payable during life and the principal, on the death of any one, to be divided amongst the others. He subsequently executed a codicil, which by the 3d clause provided that "when my youngest child attains the age of twenty one years a sum of thirty thousand dollars be set apart by my executors before my residuary estate is divided, for the benefit of my wife, provided she remains my widow, and that said sum shall be invested for her benefit and the interest thereon paid over to her during her natural life, and at her death the principal to revert to my estate." *Held*, that the testator limited the 3d clause of the codicil to the contingency that his widow should survive, unmarried, the minority of the youngest child and did not intend to affect or change the other provisions of the will until and unless such contingency arose; that by reason of the death of the widow, before this child attained majority, the clause never took and never can take effect, and there is, therefore, no invalid suspension of the power of alienation. The 10th clause completely and legally provided for the disposition of the residuary estate, and the clause of the codicil having failed of operation the will remains as originally framed.

On the probate of the will during the life of the widow, unmarried, and before the youngest child had attained majority, a decree was entered which, among other things, determined certain questions relating to the construction of the 3d clause of the codicil. *Held*, that the surrogate intended to simply pass on the validity of said clause, on the assumption that it did create a trust, without deciding the underlying question whether it did so or not, and that he did not adjudicate the proposition now brought to the attention of the court that this

clause was only to take effect on a certain contingency which never happened.

*Morton Trust Co.* v. *Sands*, 122 App. Div. 691, reversed.

(Argued February 18, 1909; decided March 16, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 23, 1908, which modified and affirmed as modified a judgment entered upon the report of a referee construing the will of Mahlon Sands, deceased, and settling the accounts of the trustee thereunder.

The action was brought for the construction of the will of one Mahlon Sands and for a settlement of the accounts of the plaintiff as trustee thereunder, and especially requires consideration of a provision in the codicil hereafter quoted.

The testator left him surviving a widow and four children, one of the latter being by a former wife. His widow died before the youngest child became of age, the latter event being a matter of importance herein. His will, after certain specific bequests, and after giving to his widow, provided she remained such and until the majority of the youngest child, two-thirds of the net income of his estate, and having directed that the profits of a certain business interest owned by him, after the youngest child attained majority, should be divided between his widow, providing she remained such, and her children by him, contained the following provisions which are especially involved :

"10th. When my youngest child attains its majority I direct that all the rest, residue and remainder of my estate be divided equally between my wife, provided she has remained my widow, and her children by me ; and that one of such portions be invested as a separate fund for the benefit of each of said persons, and the income thereof to be paid over to each of said persons as long as they may live. At the death of my wife or of any one of my children by her, the principal sums hereinabove provided for shall be divided equally between the survivors, but should any child die leaving issue, such issue are

to receive in equal shares such portions of the patent medicines above referred to and of my residuary estate as their parent would have received if living." ·

" Third. (Codicil.) It is my will that when my youngest child attains the age of twenty-one years a sum of thirty thousand dollars be set apart by my executors before my residuary estate is divided, for the benefit of my wife, provided she remains my widow, and that said sum shall be invested for her benefit, and the interest thereon paid over to her during her natural life, and at her death the principal to revert to my estate."

When the will was presented for probate the widow was still living and unmarried and the younguest child had not attained majority. Under these circumstances a decree was entered admitting said will to probate and as claimed construing the provision last quoted in such a manner as to adjudicate adversely the claim now made by the appellants Mahlon and Ethel Sands that said provision never became operative and that, therefore, it is immaterial that it would have been illegal if taking effect. Said decree, after reciting the production of the will and that various parties, by their answers, had put in issue " the validity, construction and effect of certain of the dispositions of personal property contained in the said papers so offered for probate," adjudged and decreed " that the questions in issue respecting the validity, construction and legal effect of the dispositions of personal property contained in the    *  *  *    tenth    *  *  *    clauses of the said will, and in the    *  *  *    third    *  *  *    clauses of the said codicil, are determined as follows, that is to say:    *  *  *

" 8. It is adjudged and determined in respect of the third clause of the codicil that the bequest of thirty thousand dollars ($30,000) to the testator's widow is made payable out of the capital of the testator's estate when the youngest child, viz., Morton Harcourt Sands, shall attain majority or shall previously die, and provided she, the said Mary M. Sands, shall have, until then, remained the testator's widow. It is

adjudged and determined that the provision of the will for the reversion of the said legacy to the residuary estate, upon her death or remarriage, after the majority, or decease before attaining majority, of Morton Harcourt Sands, is invalid, except as to that portion of said legacy which shall, under the provisions of the tenth clause, be incorporated in the portion held in trust for Morton Harcourt Sands, or be paid to his issue, if he be then dead," etc.

*Egerton L. Winthrop, Jr.,* for plaintiff, appellant. The surrogate's decree, dated January 25, 1889, is a valid and binding adjudication and conclusive on the parties to this action. (*Griffen* v. *Keese,* 187 N. Y. 454; *N. F. Ins. Co.* v. *Hughes,* 189 N. Y. 84; *Pakas* v. *Hollingshead,* 184 N. Y. 211; *Thorn* v. *Breteuil,* 179 N. Y. 64; *Pray* v. *Hegeman,* 98 N. Y. 351; *Young* v. *Farwell,* 165 N. Y. 341.) As no exception was taken by the defendants Mahlon Alan Sands and Ethel Sands to the fifth finding of fact or to the first conclusion of law in the referee's report, these findings are not now subject to review by this court. (*Lanier* v. *Hoadley,* 42 App. Div. 6; *Patterson* v. *Robinson,* 116 N. Y. 193; *McCulloch* v. *Dobson,* 133 N. Y. 114.) The referee and the court at Special Term committed no error in holding that there was an undue suspension as to two-thirds of the $30,000 fund and that as to the third bequeathed to the defendant Morton Harcourt Sands the trust was valid. (*Haynes* v. *Sherman,* 117 N. Y. 433; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86; *Matter of Mount,* 185 N. Y. 162; *Harrison* v. *Harrison,* 36 N. Y. 543; *C. C. Bank* v. *Payne,* 164 N. Y. 252.)

*William G. Choate* for Mahlon A. Sands et al., appellants. The 3d clause of the codicil contained no words of direct gift of the $30,000, but a mere direction to the executors, on the youngest child's arriving at age, to "set apart" that sum for the benefit of his wife, before the testator's residuary estate was divided, in case she survived until then and

remained his widow. And in case she did not survive until then, there was no authority for the setting apart of this sum, or, in other words, no gift of it by that clause, the only gift of it therein being in the direction to set it apart, and it necessarily remained a part of the residuary estate, and passed by force of the original gift or disposition of the same contained in the 10th clause of the will. (*Matter of Baer*, 147 N. Y. 348; *Rudd* v. *Cornell*, 171 N. Y. 114; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Lewisohn* v. *Henry*, 179 N. Y. 352; *Hancock* v. *Watson*, L. R. [App. Cas. 1902] 14; *Ring* v. *Hardwick*, 2 Beav. 352; *Cooke* v. *Cooke*, L. R. [38 Ch. Div.] 202; *Fitzgibbon* v. *McNeill*, L. R. [1 Ir. 1908] 1; *Ward* v. *Stanard*, 82 App. Div. 386; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86.) In cases where there is a gift in the first instance, which is complete in itself, and it is sought by a subsequent provision to engraft a modification upon it, particularly where this is done by a codicil, the fact that the modification fails because it is too remote does not prevent the prior gift from taking effect. (1 Jarman on Wills [6th ed.], 264, 266, 826, 827; *Carver* v. *Bowles*, 2 R. & M. 306; *Kampf* v. *Jones*, 2 Keen, 756; *Ring* v. *Hardwick*, 2 Beav. 352; *Hancock* v. *Watson*, L. R. [App. Cas. 1902] 14; *Van Horne* v. *Campbell*, 100 N. Y. 287; *Brattle Square Church* v. *Grant*, 3 Gray, 142.) The possible invalidity of the provisions of the 3d clause of the codicil could not prevent the gift or disposition of the $30,000 as part of the residue under the 10th clause of the will from taking effect. (*Hennessy* v. *Patterson*, 85 N. Y. 91; *Higgins* v. *Downs*, 101 App. Div. 119; *Fowler* v. *Depau*, 26 Barb. 224; *Schettler* v. *Smith*, 41 N. Y. 328; *Matter of McCoy*, 51 Misc. Rep. 441; *Bailey* v. *Bailey*, 97 N. Y. 460; *Proctor* v. *Bishop*, 2 H. Bl. 358; *Dungannon* v. *Smith*, 12 Cl. & F. 546; *Hancock* v. *Watson*, L. R. [App. Cas. 1902] 21.) There is no ground for the contention that the remainder in this $30,000 took effect as to the youngest child's share thereof, notwithstanding the widow did not survive until he reached majority. (*Bailey* v. *Bailey*, 97 N. Y. 460; *Matter of Mount*, 107 App. Div. 1; *Schettler* v. *Smith*, 41 N. Y. 328.)

*William Williams* for Morton H. Sands, appellant. The surrogate's decree determined that the provision for reversion is "invalid," excepting as to the share of Morton Harcourt Sands, and that the balance is to be disposed of as intestate property. No appeal was taken from this decision and the parties hereto are now estopped from questioning its finality. (*McCulloch* v. *Dobson,* 133 N. Y. 114; *Young* v. *Farwell,* 165 N. Y. 341; *Honsinger* v. *U. C. & G. Co.,* 175 N. Y. 229; *Thorn* v. *De Breteuil,* 179 N. Y. 64; *O'Donahue* v. *Smith,* 184 N. Y, 365; *Nat. Fire Ins. Co.* v. *Hughes,* 189 N. Y. 84; *Conyngham* v. *Shiel,* 20 Misc. Rep. 590; *Leavitt* v. *Wolcott,* 95 N. Y. 212; *Dyett* v. *Hyman,* 129 N. Y. 351.) The contention that there was nothing which could revert under the 3d clause of the codicil because of the death of the widow before the majority of the youngest child cannot be sustained. (*U. S. T. Co.* v. *Hogencamp,* 191 N. Y. 281.)

*Russell Benedict, Frederic F. de Rham* and *Henry Warren Beebe* for defendants, respondents. At the time of the testator's death there was a possibility that the absolute ownership of two-thirds of the fund of $30,000 created by the 3d clause of the codicil would be suspended for more than two lives in being. This provision is, therefore, invalid, and the testator died intestate as to this fund. The fact that because of an event subsequent to the testator's death, namely, the death of Mrs. Sands before Morton Harcourt Sands attained his majority, absolute ownership would not actually have been suspended for more than two lives in being, does not validate this invalid provision. (*Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86; *Dana* v. *Murray,* 122 N. Y. 614; *C. T. Co.* v. *Egleston,* 185 N. Y. 31; *Fowler* v. *Ingersoll,* 127 N. Y. 472; *Schettler* v. *Smith,* 41 N. Y. 328; *Hayes* v. *Sherman,* 117 N. Y. 433; *Underwood* v. *Curtis,* 127 N. Y. 523; *Hawley* v. *James,* 16 Wend. 61; *U. T. Co. of N. Y.* v. *Metcalf,* 37 Misc. Rep. 672; *Jennings* v. *Jennings,* 7 N. Y. 547.) The contention that there was no unlawful suspension of the power of alienation because there was to be no vesting of the gift and no

setting aside of the fund until the majority of the youngest child, is unsound. (*Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86.) The limitation of the fund of $30,000 in the 3d clause of the codicil cannot be upheld as an alternative or separable limitation. (*Hancock* v. *Watson*, L. R. [App. Cas. 1902] 14; *Proctor* v. *Bishop of Bath & Wells*, 2 H. Bl. 358; Gray on Perpetuities, 293; Chaplin on Susp. of Power of Alienation, 276; *Hawley* v. *James*, 16 Wend. 121.) This invalidity in the disposition of two-thirds of the fund of $30,000 extends to the whole fund, and the testator died intestate as to the whole thereof. (*Brown* v. *Quintard*, 177 N. Y. 75; *Benedict* v. *Webb*, 98 N. Y. 460.) The judgment of the Surrogate's Court declaring that there was an intestacy as to two-thirds of this fund constitutes a former adjudication. (*Demarest* v. *Darg*, 32 N. Y. 281–290; *W. S. Bank* v. *Town of Solon*, 136 N. Y. 465; *Williams* v. *Barkley*, 165 N. Y. 48; *Dwight* v. *St. John*, 25 N. Y. 203; *Brown* v. *Mayor*, 66 N. Y. 385; *Swinton* v. *Zalinski*, 94 N. Y. 519; *Culross* v. *Gibbons*, 130 N. Y. 447; *Young* v. *Farwell*, 165 N. Y. 341; *Pray* v. *Hegeman*, 98 N. Y. 351; *Matter of Davis*, 105 App. Div. 221; 182 N. Y. 468.)

HISCOCK, J. The substantial questions presented for our decision on this appeal are two in number. The primary one is whether a certain clause in the codicil of the testator Sands directing a violation of the prohibition against undue suspension of the power of alienation ever took effect so as to produce intestacy as to part of his estate. The second one is whether, even if this question as an original one could be answered in the negative, those contending for and who would be benefited by such answer are so bound by a former adjudication to a contrary conclusion that they may not now escape. The Appellate Division has decided the last question in the negative and by a divided vote has answered the first one in the affirmative. While agreeing with its decision on the second question we find ourselves unable to agree with that made by it on the first one.

Although set forth in the foregoing statement of facts, for convenience we shall again quote in this connection the disputed clause found in testator's codicil which reads: "It is my will that when my youngest child attains the age of twenty-one years a sum of thirty thousand dollars be set apart by my executors before my residuary estate is divided, for the benefit of my wife, provided she remains my widow, and that said sum shall be invested for her benefit, and the interest thereon paid over to her during her natural life, and at her death the principal to revert to my estate."

This clause is related to and must be construed with reference to the tenth clause of the will also heretofore quoted, which in substance directed that when the testator's youngest child attained its majority all of the residue of his estate should be divided equally between his wife, provided she had remained his widow, and her children by him, a separate trust fund being created for each of said persons the income payable during life and the principal on the death of any one to be divided amongst the others, issue taking the share of a deceased parent.

It is conceded that if the third clause of the codicil took effect at all events on the testator's death and as of that time created a trust, taken in connection with the tenth clause of the will it did permit a suspension of the power of alienation of at least two-thirds of thirty thousand dollars for more than two lives in being. On the other hand it is or must be conceded if this clause merely directed the setting up of a trust at a specific future day, providing and providing only testator's widow on that day was still living and a widow, that the contingency thus provided for never having arisen the clause never became effective and the estate is to be administered under the other valid provisions of the will as though it had never been written. The question is, which interpretation shall be placed on the clause and we confess that the decision of that question has not been accompanied by any considerable doubt. It seems quite plain that the latter construction is the one which should be adopted. The language

employed by the testator does not either expressly or by any fair implication create a trust to take effect at his death and at all events. He, judged by what he said, was contemplating a specific event in the future, namely, the survival by his widow still unmarried of the minority of their youngest child, and by language which is quite apt he provided for this particular contingency. If it arose, then and then for the first time, his executors were authorized to withdraw from the disposition of his residuary already made under clause ten of his will a certain amount of money and apply it to the use of his widow. There is nothing in this language which fairly indicates to us that he intended to create a trust even though this contingency did not arise and which should be applicable in case the wife did not survive the minority of the youngest child, a condition already amply provided for by the other provisions of his will.

Some other features of the will strengthen the conclusion to which the language of this specific clause leads us. In considering his widow the testator divided the future into two distinct periods, one during the minority of the youngest child and one after. In addition to other things he had provided that his widow should have two-thirds of the income of his estate during this minority. Then he provided still by the will proper that when this minority ended the widow should receive the income of only a quarter of the residuary estate. Later he apparently became solicitous lest this reduction in her income might be too severe and, therefore, by this disputed clause of the codicil he provided for this express contingency of her survival unmarried of the minority of the child directing that she should have the income of an additional thirty thousand dollars. There was no object in his providing for anything else and in our judgment he clearly and decisively limited this clause to this future event and did not intend that the other provisions of his will should in any way be affected or changed by it until and unless such contingency arose, as it never did and never can.

If this view is correct there is, of course, no invalid suspen-

sion of the power of alienation in the remainder in the fund of thirty thousand dollars, after the widow is deceased, to his residuary estate and through it to his children. The clause never having taken effect there could be no remainders. The tenth clause of the will completely and legally provided for a disposition of the residuary estate and it remains as originally framed, the clause of the codicil having failed of operation.

We now come to the second question, whether there has been an adjudication against them which prevents the appellants from securing the benefit of the views which we have expressed. The claim that there has been such an adjudication is based on the provisions of the decree admitting to probate and purporting to construe certain provisions of the will in question, and especially upon that provision of the eighth clause of the decree already quoted in the statement of facts whereby it is determined that the provision of the will (third clause of the codicil) for the reversion of the said legacy to the residuary estate upon her (the widow's) death or remarriage, after the majority, or decease before obtaining majority, of Morton Harcourt Sands, is invalid. It frankly may be admitted that this question is a closer one, and that a forcible argument may be made as it has been made on either side thereof. The general question whether there was an adjudication of the question now before us resolves itself into the other one, whether the surrogate did intend or attempt to decide whether the third clause of the codicil created a trust taking effect on the testator's death and at all events, and, therefore, involving an undue suspension, or whether he intended and attempted simply to pass on the validity of said clause on the assumption that it did create such a trust, and without deciding the underlying question whether it did so create one or not. After proper consideration we have concluded to adopt the latter view and treat the decree as not adjudicating the proposition now pressed on our attention that here was a clause only to take effect on a certain contingency which never happened. The pleadings in the proceeding before the surrogate were

not put in evidence, and, therefore, we are deprived of the help which they might have afforded to us in determining the precise issue which was submitted to the surrogate. It is to be borne in mind that at the time when this decree was made the widow was still living, and, therefore, it was quite natural to view and consider the will on the theory that the contingency mentioned in the third clause of the codicil would arise and then pass on to a construction of its provisions when and after it had become effective. Without refining too much on the presence or absence of some comma or on the most exact meaning of some particular word, but giving to all of his words a fair and reasonable meaning in the light of circumstances then existing, this is apparently what the surrogate did. We find it first adjudged and determined that the " bequest of thirty thousand dollars to the testator's widow is made payable  *  *  *  when the youngest child shall attain majority or shall previously die, provided she, testator's widow  *  *  *  shall have, until then, remained his widow." That is what the surrogate was considering — a clause directing payment of a certain sum at a certain time, provided the widow at that particular time still remained unmarried. Evidently he was not considering at all the scope or effect of this clause provided the widow did not survive the minority or decease before majority of the child. She was then alive, and his mind contemplated the continuance of present conditions. Then on the theory thus and alone adopted he necessarily reached the conclusion that " the provision of the will for the reversion of the said legacy to the residuary estate, upon her death or re-marriage, after the majority, or decease before obtaining majority, of Morton Harcourt Sands, is invalid." This we think is all that the decree may fairly be regarded as having adjudicated, that this clause, if assumed to take effect, did illegally suspend the final disposition of the fund after the widow's death or re-marriage.

Aside from the fundamental questions which we have discussed, it is urged that the appellants have not taken such

exceptions to the decision of the referee before whom this case was tried on this subject of former adjudication in bar as to permit them to question its consequences. The first conclusion of law of the latter was " That the decree of the Surrogate hereinbefore found to have been made on or about January 25, 1889, is valid and binding and a final adjudication in respect to all the questions and matters determined by the said decree on all the parties thereto and hereto, their heirs, successors, executors, administrators and assigns." This conclusion and fifth finding of fact on this subject were not excepted to. Exceptions were taken to various findings of fact and to other conclusions of law which probably were sufficient to enable the appellants to argue the questions which they desire to even if they had neglected to take a necessary exception to the conclusion quoted. We do not, however, think that it was necessary for them to take any exception to this conclusion. It may be conceded that the decree of the surrogate was a binding and final adjudication " in respect to all the questions and matters determined by the said decree." The very question involved on this branch of the case is whether said decree did decide the question now presented in regard to clause three of the codicil. Having reached the conclusion that it did not adjudicate that question there is nothing in the conclusion of law here presented which bars appellants from urging their views.

The judgments of the Appellate Division and of the Special Term should be reversed and a new trial granted, with costs to each appellant, appearing on appeal and filing briefs, payable out of the estate.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Judgments reversed, etc.